FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 29, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANTHONY W., | NO: 2:21-CV-106-RMP |
| Plaintiff, | |
| v. | ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Anthony W.[1], ECF No. 16, and Defendant the Commissioner of Social Security ("Commissioner"), ECF No. 17. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), of the Commissioner's denial of his claim for Social Security Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 1

Security Act (the "Act").  *See* ECF No. 16 at 2.  Having considered the parties'

motions, the administrative record, and the applicable law, the Court is fully

informed.  For the reasons set forth below, the Court grants in part Plaintiff's Motion

for Summary Judgment, denies the Commissioner's Motion, and remands for further

proceedings.

## BACKGROUND

### *General Context*

Plaintiff applied for DIB and SSI on approximately, March 8, 2017.

Administrative Record ("AR")  304–17, 384.[2]  Plaintiff alleged a disability onset

date of December 15, 2016, when he was 45 years old, and maintained that he was

unable to function and/or work due to herniated disks, spinal cord impingement,

tremors, conversion disorder, severe neck pain, anxiety, depression, and arthritis.

AR 377, 384.  The application was denied initially and upon reconsideration, and

Plaintiff requested a hearing.  *See* AR 1–2.

On September 11, 2019, Plaintiff, represented by Steven Kfoury, appeared

from Wenatchee, Washington, before Administrative Law Judge ("ALJ") Virginia

Robinson, in Seattle, Washington.  AR 47.  Plaintiff, who was 48 years old at the

time of the hearing, testified that he had completed his education through a GED and

---

[2] The AR is filed at ECF No. 14.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 2

was living alone in an RV at the time of the hearing.  AR 53.  Plaintiff responded to questions from the ALJ and his attorney.  The ALJ also posed hypothetical scenarios to Vocational Expert ("VE") Jeff Cockrum, who also responded to questions from Plaintiff's attorney.  *See* AR 47, 52–78.  On September 1, 2020, ALJ Robinson held a supplemental hearing, at which Plaintiff appeared telephonically with his attorney Mr. Kfoury.  AR 81–82.  Plaintiff's attorney had requested the supplemental hearing to address the report and records of examining movement specialist Katelan Longfellow, MD, which the ALJ had received after the first hearing.  AR 82.  The ALJ again heard testimony from Plaintiff, but did not recall a VE.  AR 84.  In addition to addressing Dr. Longfellow's report, the ALJ noted that Plaintiff had a previously unaddressed issue of a possible meniscus tear in his knee for which he may require arthroscopic surgery.  AR 84.

### ALJ's Decision

On September 30, 2020, ALJ Robinson issued an unfavorable decision.  AR 26–37. Applying the five-step evaluation process, ALJ Robinson found:

**Step one:** Plaintiff meets the insured status requirements of the Act through December 31, 2021, and Plaintiff has not engaged in substantial gainful activity since December 15, 2016, the alleged onset date.  AR 29.

**Step two:** Plaintiff has the following severe impairments that are medically determinable and significantly limit his ability to perform basic work activities:

cervical degenerative disk disease, cervical dystonia/torticollis, conversion disorder, depressive disorder, post-traumatic stress disorder ("PTSD"), and anxiety disorder. AR 29. The ALJ further found that:

> The claimant's right knee condition does not constitute a severe [sic] because it has not met the durational requirement. The claimant did not begin seeking treatment for significant right knee pain until early 2020. Clinical findings included an abnormal gait. A June 2020 MRI revealed a partial meniscus tear. On April 21, 2020, he indicated that he had had no prior treatment for right knee pain, which I find is consistent with the record. Therefore, I find that the claimant's right knee condition began no earlier than January 2020 and therefore has not met the 12-month durational requirement for a severe impairment.

> The claimant testified that he had been diagnosed with a Parkinson's-like disease regarding his shaking. His doctor recommended a medication that is used for Parkinson's, but he declined the medication due to possible side effects (Hearing Transcript). It appears that the claimant is referring to his diagnosis of cervical dystonia/torticollis for which treating provider Dr. Tornabene suggested the medication Artane. In any event, regardless of the precise diagnostic label, I have considered all the claimant's symptoms as reflected in the longitudinal record in evaluating his testimony and in assessing the residual functional capacity below.

AR 29 (internal citations to record omitted).

**Step three:** The ALJ concluded that Plaintiff's impairments, considered singly and in combination, do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). AR 29. In reaching this conclusion, the ALJ found that Plaintiff's cervical spine symptoms do

not meet listing 1.04 (Disorders of the Spine) because "objective medical evidence

does not show compromise of the spinal cord or a nerve root along

with motor loss (atrophy with associated muscle weakness or muscle weakness)

accompanied by sensory or reflex loss."  AR 29 (internal citation to record omitted).

The ALJ also found that the diagnoses of cervical dystonia and torticollis are not

listed impairments, and no acceptable medical source has indicated that the

symptoms associated with those impairments medically equal any listing.  AR 29.

The ALJ also memorialized that she considered whether Plaintiff's mental

impairments satisfy the "Paragraph B" criteria by resulting in one extreme limitation

or two marked limitations in a broad area of functioning.  AR 30.  The ALJ found

that Plaintiff has no limitation in either understanding, remembering, or applying

information or adapting and managing himself.  AR 30.  In interacting with others,

the ALJ found that Plaintiff is moderately limited.  The ALJ also found Plaintiff to

be moderately limited in his ability to concentrate, persist, or maintain pace.  AR 30.

The ALJ found, in addition, that Plaintiff failed to establish the presence of the

"paragraph C" criteria.  AR 30.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff has

the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)

except that he can occasionally climb ramps or stairs. He cannot climb ladders, ropes

or scaffolds.  He can frequently balance, kneel, crouch, and crawl, and can

occasionally stoop.  He can frequently handle, finger, and reach overhead; other reaching is not limited.  He should avoid concentrated exposure to wetness; excessive vibration; and workplace hazards such as working with dangerous machinery and working at unprotected heights.  He can perform simple, routine tasks in a routine work environment with simple work-related decisions.  He can have superficial interaction with coworkers and minimal interaction with the public. AR 31.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record" for several reasons that the ALJ discussed.  AR 32.

**Step four:** The ALJ found that Plaintiff is unable to perform any past relevant work.  AR 35–36.

**Step five:** The ALJ found that Plaintiff has a high school education; was 45 years old, which is defined as a younger individual (age 18-49), on the alleged disability onset date, but Plaintiff subsequently had entered the age category of "closely approaching advanced age"; and that transferability of job skills is not material to the determination of disability because the application of the Medical-Vocational Guidelines to Plaintiff's case supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.  AR 36.  The ALJ

found that there are jobs that exist in significant numbers in the national economy

that Plaintiff can perform considering his age, education, work experience, and RFC.

AR 36.  Specifically, the ALJ recounted that the VE identified the following

representative occupations that Plaintiff would be able to perform with the RFC:

production assembler, electric accessories assembler, and routing clerk.  AR 36.  The

ALJ concluded that Plaintiff had not been disabled within the meaning of the Act at

any time from December 15, 2016, through the date of the ALJ's decision.  AR 37.

The Appeals Council denied review.  AR 1–3.

## LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the

Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

Commissioner's denial of benefits only if the ALJ's determination was based on

legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

determination that a claimant is not disabled will be upheld if the findings of fact are

supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10

(9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 7

Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under

a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### *Sequential Evaluation Process*

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 416.920, 404.1520. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 416.920(a)(4)(i), 404.1520(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 416.920(a)(4)(ii), 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 9

1  416.920(a)(4)(iii), 404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If

2  the impairment meets or equals one of the listed impairments, the claimant is

3  conclusively presumed to be disabled.

4      If the impairment is not one conclusively presumed to be disabling, the

5  evaluation proceeds to the fourth step, which determines whether the impairment

6  prevents the claimant from performing work that he has performed in the past.  If the

7  claimant can perform his previous work, the claimant is not disabled.  20 C.F.R. §§

8  416.920(a)(4)(iv), 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment

9  is considered.

10     If the claimant cannot perform this work, the fifth and final step in the process

11  determines whether the claimant is able to perform other work in the national

12  economy considering his residual functional capacity and age, education, and past

13  work experience.  20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v); *Bowen v.*

14  *Yuckert*, 482 U.S. 137, 142 (1987).

15     The initial burden of proof rests upon the claimant to establish a prima facie

16  case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

17  Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

18  is met once the claimant establishes that a physical or mental impairment prevents

19  him from engaging in his previous occupation.  *Meanel*, 172 F.3d at 1113. The

20  burden then shifts, at step five, to the Commissioner to show that (1) the claimant

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 10

can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

The parties' motions raise the following issues regarding the ALJ's decision:

1.    Did the ALJ err in finding that Plaintiff's right knee condition did not meet duration and was, therefore, not a severe impairment?

2.    Did the ALJ erroneously evaluate medical opinion evidence, resulting in an RFC that failed to account for all of Plaintiff's limitations?

3.    Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?

## DISCUSSION

### *Severity of Plaintiff's Right Knee Condition*

Plaintiff argues that the ALJ erroneously applied the durational requirement in finding that Plaintiff's right knee condition began no earlier than January 2020.  ECF No. 16 at 2–3.  Plaintiff argues that he first reported knee pain during the relevant period, in an August 2018 appointment with primary care provider Wendy Hughes, ARNP, and that right knee pain secondary to a tear of the medial meniscus is demonstrated in the record from then through July 2020.  *Id.* at 3 (citing AR 1213).  Plaintiff further argues that "even if Plaintiff's knee issues had only presented

beginning in June 2020, he maintains the ALJ failed to consider whether or not the impairment could be *expected* to last 12 months." *Id.* Lastly, Plaintiff argues that the error is not harmless because the ALJ did not consult a vocational expert at the September 2020 supplemental hearing and did not alter Plaintiff's RFC despite the allegedly new impairment of right knee pain, "suggesting she did not in fact consider all of Plaintiff's symptoms in assessing his RFC." *Id.* at 4–5 ("Had the ALJ properly considered Plaintiff's right knee condition as a severe impairment that met the durational requirement, the RFC as proposed by the ALJ may have been altered to reflect additional limitations.").

The Commissioner responds that substantial evidence supports the ALJ's finding at step two that Plaintiff's knee impairment was not severe, while finding other of Plaintiff's impairments to be severe. ECF No. 17 at 8. The Commissioner adds that Plaintiff has not met his burden of showing any error at step two was harmful by showing that a functional limitation from Plaintiff's knee impairment would have affected the ALJ's analysis. *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 682–83 (9th Cir. 2005). The Commissioner continues that although Plaintiff maintains that the meniscus tear contributed to Plaintiff's antalgic gait, the ALJ cited multiple records showing that Plaintiff displayed a normal gait and station when examined. *Id.* at 8 (citing AR 33, 521, 523, 552, 582, and 1014). Therefore, the

Commissioner asserts, "[i]t follows that whether or not [Plaintiff's] knee impairment was 'severe,' the evaluation of Plaintiff's RFC was not prejudiced." *Id.* at 9.

Plaintiff replies that Defendant cites to examinations dated June 2017, July 2017, August 2017, and October 2017, when Plaintiff did not begin reporting right knee pain until August 2018.  ECF No. 18 at 2 (citing AR 520–23, 551–52, 581–82, and 1213).  Plaintiff acknowledges that the Commissioner cited to one visit, in May 2019, after Plaintiff began reporting right knee pain, but Plaintiff argues that the focus of that visit was on Plaintiff's cervical spine and upper extremity tremors. ECF No. 18 at 2.  Plaintiff argues that presenting with normal gait at a single appointment "stands in stark contrast to the remaining record documenting instances of Plaintiff exhibiting a wide-based gait ([AR] 1211), an unsteady gait ([AR] 927), a shuffling gait ([AR] 1730), and a limping gait ([AR] 1194, 1202, 1205, 1730, 1740, 1744)." *Id.*  Finally, Plaintiff argues that the record supports that Plaintiff was diagnosed with a tear of the medial meniscus based on an MRI in June 2020 and was advised to proceed with a right knee arthroscopy.  AR 1734, 1757.

Step two requires that a claimant make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities.  20 C.F.R. § 404.1520(c)*; Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b).  Under the twelve-month durational requirement set forth

1   in 42 U.S.C. § 423(d)(1)(A), the term "disability" means "the inability to engage in

2   any substantial gainful activity by reason of any medically determinable physical or

3   mental impairment which can be expected to result in death or which has lasted or

4   which can be expected to last for a continuous period of not less than 12 months."

5   An impairment that has not yet lasted twelve months but that is expected to last that

6   amount of time also may satisfy the twelve-month duration requirement. *Barnhart*

7   *v. Walton*, 535 U.S. 212, 214 (2002).

8        The ALJ found that Plaintiff's right knee condition was not severe because it

9   did not meet the durational requirement. AR 29. The ALJ found that Plaintiff "did

10  not begin seeking treatment for significant right knee pain until early 2020." AR 29

11  (citing treatment records from 2020). The treatment records that the ALJ cites

12  indicate that Plaintiff reported that he had "just dealt with" knee pain, swelling, and

13  his knee "giving out" for approximately six or seven years before an April 2020

14  appointment. AR 1752. In addition, in August 2018, Plaintiff's primary care

15  provider, Wendy Hughes, ARNP, added a "new problem" of right knee pain to

16  Plaintiff's treatment record after Plaintiff's physical examination indicated "right

17  knee mild effusion, tender to touch[,] wide based gait[.]" AR 1211–12.

18        The ALJ did not analyze whether Plaintiff's right knee condition could be

19  expected to last for twelve months. Nor did the ALJ analyze whether Plaintiff's

20

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 14

right knee condition would have amounted to a severe impairment had it met the duration requirement. *See* AR 29.

Moreover, the RFC that the ALJ formulated characterized Plaintiff as capable of light work and able to "frequently balance, kneel, crouch, and crawl, and can occasionally stoop," and set forth other limitations. AR 31. There is no reference in the ALJ's RFC analysis to Plaintiff's knee pain, so the Court cannot determine that the ALJ considered the knee pain in formulating the RFC and the questions posted to the VE. Accordingly, the step two error in determining whether Plaintiff's knee pain constitutes a severe impairment was not harmless.

### *Medical Opinion Evidence*

Plaintiff argues that the ALJ harmfully erred in failing to address opinion evidence from two providers: Kristina Petsas, MD, and Maria Garcia Ball, ARNP. ECF No. 16 at 12.

The Commissioner responds that the evidence that the ALJ did not address was not "significant probative evidence," and, therefore, the ALJ did not need to address why it had been rejected. ECF No. 17 at 9 (citing *Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)). The Commissioner contends that the two medical notes that the ALJ did not address were not significant probative evidence of Plaintiff's condition. *Id.*

1      Plaintiff applied for DIB and SSI on approximately, March 8, 2017. AR

2   304–17, 384. Revisions to rules guiding the evaluation of medical evidence that

3   took effect on March 27, 2017, do not apply to claims filed before March 27, 2017,

4   and the "treating physician rule" under the previous regulations instead applies.

5   *See* 20 C.F.R. § 416.927.

6      Under the treating physician rule, "the weight afforded to a medical opinion

7   depends upon the source of that opinion. A treating physician's opinion, for

8   example, is entitled to greater weight than the opinions of nontreating physicians."

9   *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020). An ALJ must consider the

10  acceptable medical source opinions of record and assign weight to each. 20 C.F.R.

11  §§ 404.1527(c), 416.927(c). This responsibility often involves resolving conflicts

12  and ambiguities in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722

13  (9th Cir. 1998). To reject the contradicted opinion of a treating or examining

14  physician, the ALJ must provide specific and legitimate reasons for doing so.

15  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). "An ALJ can satisfy the

16  substantial evidence requirement by setting out a detailed and thorough summary

17  of the facts and conflicting clinical evidence, stating his interpretation thereof, and

18  making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing

19  *Reddick*, 157 F.3d at 725).

20

21

An ALJ may discount an otherwise valid medical source opinion as overly conclusory, poorly supported by or inconsistent with the objective medical record, or inordinately reliant on a claimant's self-reported symptoms, provided the ALJ provides clear and convincing reasons to discredit the symptom allegations. *See, e.g., Coleman v. Saul*, 979 F.3d 751, 757–58 (9th Cir. 2020).

### Kristina Petsas, MD

Plaintiff argues that the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Petsas's opinion that Plaintiff is limited in his ability to walk long distances due to tremors and balance issues. ECF No. 18 at 6.

The Commissioner responds that the form at issue was requesting temporary transportation assistance for Plaintiff in August 2017, and Dr. Petsas did not indicate how long she expected Plaintiff's inability to walk long distances to last. ECF No. 17 at 9.

Plaintiff replies that Dr. Petsas indicates within her opinion that Plaintiff's limitations are not temporary and suggests that the limitations are permanent. ECF No. 18 at 7. Plaintiff further argues that Dr. Petsas's opinion qualifies as a medical opinion that must be addressed by the ALJ within the decision. *Id.* at 6.

Dr. Petsas completed a "Mode Exception Questionnaire" for Mr. Wolf on August 11, 2017, with respect to Plaintiff's request to receive transportation through

a medical transportation program in King and Snohomish Counties, Washington. AR 555–57.  Dr. Petsas indicated "No" in response to the form's question, "Client cannot functionally use public transit and requires door-to-door service."  AR 556. Dr. Petsas wrote the following explanation as to how Plaintiff's health condition prevented him from using the regular bus: "Limited walking b/c tremors and balance, can't walk long distances to catch the bus."  AR 556.  Dr. Petsas checked a box indicating that Plaintiff's condition was not temporary.  AR 556.  Dr. Petsas signed the form as Plaintiff's primary care provider.  AR 557.

The ALJ's opinion did not address Dr. Petsas's opinion.  *See* AR 26–37.  The Court cannot evaluate whether the ALJ provided sufficient reasons for discounting Dr. Petsas's opinion that Plaintiff's tremors limited his ability to walk because the ALJ's decision is silent as to Dr. Petsas, who was a treating physician.  Moreover, contrary to the Commissioner's assertion, Dr. Petsas opined that Plaintiff's limitation was not temporary.  *See* AR 556.  Accordingly, the Court finds that the ALJ harmfully erred by failing to address Dr. Petsas's medical opinion, which may have resulted in a more restrictive RFC.

**Maria Garcia Ball, ARNP**

Plaintiff argues that the ALJ's failure to address Ms. Ball's opinion, an "other source" opinion under the prior regulations amounted to clear error because, "had the ALJ accepted ARNP Ball's opinion, Plaintiff would be unable to perform the

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 18

1    light level of work (and likely even the sedentary level [sic] work) proposed by the

2    VE at the hearing."  ECF No. 18 at 8 (citing AR 36, 76).

3        The Commissioner argues that Ms. Ball's note from March 3, 2017, was not

4    probative of Plaintiff's status as of September 2020 because the record shows that

5    Plaintiff's pain subsequently improved with botox injections and Plaintiff does not

6    challenge the conclusions of the health professions who examined Plaintiff after the

7    "stray note" from Ms. Ball.  ECF No. 17 at 10–11.  Therefore, the Commissioner

8    maintains, it was not necessary for the ALJ to address Ms. Ball's opinion that

9    Plaintiff could not climb a ladder or lift objects ten pounds or more, "which was

10   accompanied by no further analysis . . . ."  *Id.* at 10.

11       In March 2017, the same month that Plaintiff applied for benefits, Maria

12   Garcia Ball, ARNP wrote a letter stating: "Anthony is currently under my care at Sar

13   [sic] Mar in Des Moines and he is being evaluated for Cervical Neuropathy.  Until

14   his pain is under control, he is not able to climb a ladder or lift objects 10 lbs or

15   more."  AR 854.  Ms. Ball did not provide any other opinions in her letter.  The ALJ

16   did not address Ms. Ball's opinions.  *See* AR 26–37.

17       The applicable Social Security regulations require an ALJ to consider all

18   medical opinions in the record, regardless of source.  20 C.F.R. §§ 404.1520;

19   404.1527(b) & (c).  Further, Social Security Ruling ("SSR") 06-03P, provides that

20   evidence from "other sources," including nurses and other medical sources who do

21

1    not qualify as "acceptable medical sources," may be used "to show the severity of

2    the individual's impairment(s) and how it affects the individual's ability to function."

3    SSR 06-03P, *available at* 2006 SSR LEXIS 5, 2006 WL 2329939; *see also* 82 FR

4    15263 (rescinding SSR 06-03P for claims filed on or after March 27, 2017).  "An

5    ALJ may not reject the competent testimony of 'other' medical sources without

6    comment." *James B. v. Berryhill*, No. 6:17-cv-1888-SI, 2018 U.S. Dist. LEXIS

7    188671, at *21 (D. Or. Nov. 5, 2018) (citing *Stout v. Comm'r*, 454 F.3d 1050, 1053

8    (9th Cir. 2006)).

9        By ignoring Ms. Ball's opinion, the ALJ failed to address medical opinion

10   evidence suggesting that Plaintiff may be more limited than the RFC indicates.  *See*

11   AR 31 (RFC without a limitation as to how much weight Plaintiff can lift).

12   Therefore, the Court finds that the ALJ harmfully erred by neglecting to address Ms.

13   Ball's opinion.

14       Having already found harmful error at Step Two and in the failure to address

15   two medical opinions, the Court does not reach Plaintiff's argument that the ALJ

16   erred in her treatment of Plaintiff's subjective symptom testimony.  Rather, the

17   Court addresses the appropriate remedy.  *See* ECF No. 18 at 8 (seeking "remand for

18   payment of benefits or remand for further proceedings, or whatever result this Court

19   deems necessary.").

20   / / /

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS ~ 20

1    ***Remedy***

2         The Ninth Circuit Court of Appeals has held that "[a] district court may

3    reverse the decision of the Commissioner of Social Security, with or without

4    remanding the cause for a rehearing, but the proper course, except in rare

5    circumstances, is to remand to the agency for additional investigation or

6    explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (quotations

7    omitted). A court should take the exceptional step of remanding for an immediate

8    award of benefits only where:

9         (1) The ALJ has failed to provide legally sufficient reasons for rejecting
          . . . evidence [probative of disability], (2) there are no outstanding issues
10        that must be resolved before a determination of disability can be made,
          and (3) it is clear from the record that the ALJ would be required to find
11        the claimant disabled were such evidence credited.

12   *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (internal quotation

13   omitted).  By contrast, remand is appropriate when additional administrative

14   proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th

15   Cir. 1989).  Even if these requirements are met, the court retains "flexibility" to

16   "remand for further proceedings when the record as a whole creates serious doubt

17   as to whether the claimant is, in fact, disabled within the meaning of the Social

18   Security Act." *Garrison*, 759 F.3d at 1021.

19        The Court does not find that the record as a whole compels a finding that

20   Plaintiff is disabled or that the credit-as-true factors have been satisfied.  For

21

instance, the record supports that Plaintiff experienced at least some improvement

to his symptoms from Botox injections, and that Plaintiff declined other treatment

that may have improved his condition.  AR 1012, 1177.  In addition, Plaintiff's

daily activities also evidence significant capability and independence.  *See* AR 34

(collecting citations to the record).  Further administrative proceedings would be

able to further develop the record with respect to whether Plaintiff's knee condition

and the two medical source opinions not previously addressed require

modifications to Plaintiff's RFC..

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that

the ALJ's decision is not supported by substantial evidence and free of harmful legal

error.  Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED IN PART** and **DENIED IN PART**.

2.  Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.  The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.  Judgment shall be entered for Plaintiff.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close the file** in this case.

**DATED** March 29, 2022.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
Senior United States District Judge